UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 18-10077-RWZ


COMMODITY FUTURES TRADING COMMISSION

v.

MY BIG COIN PAY, INC. *et al.*


MEMORANDUM OF DECISION

September 26, 2018


ZOBEL, S.D.J.

Defendant Randall Crater and all Relief Defendants[1] move to dismiss this case brought by plaintiff Commodity Future Trading Commission ("CFTC").  The amended complaint alleges a fraudulent "virtual currency scheme" in violation of the Commodity Exchange Act ("CEA" or "the Act") and a CFTC implementing regulation banning fraud and/or manipulation in connection with the sale of a commodity.  See 7 U.S.C. § 9(1); 17 C.F.R. §180.1(a).  Defendants' principal argument is that CFTC fails to state a claim because My Big Coin ("MBC" or "My Big Coin"), the allegedly fraudulent virtual currency involved in the scheme, is not a "commodity" within the meaning of the Act.  They also argue that the CEA provision and CFTC regulation are restricted to cases involving market manipulation and do not reach the fraud alleged here.  Finally, they assert that

---

[1]     The Relief Defendants are Kimberly Renee Benge; Kimberly Renee Benge d/b/a Greyshore Advertisement a/k/a Greyshore Advertiset; Barbara Crater Meeks; Erica Crater; Greyshore, LLC; and Greyshore Technology, LLC.

plaintiff's amended complaint fails to support its allegations of misappropriation.  The

motion is denied.

## I.    Factual Background

For purposes of resolving this motion I accept as true the following well-pleaded

facts, recited as alleged in the amended complaint.  See Ocasio-Hernández v.

Fortuño-Burset, 640 F.3d 1, 5 (1st Cir. 2011).

Mr. Crater and the non-moving codefendants[2] "operated a virtual currency

scheme in which they fraudulently offered the sale of a fully-functioning virtual currency"

called "My Big Coin".[3]  Docket # 63 (hereinafter "Am. Compl.") ¶ 1.  In short, defendants

enticed customers to buy My Big Coin by making various untrue and/or misleading

statements and omitting material facts.  The falsities included that My Big Coin was

"backed by gold," could be used anywhere Mastercard was accepted, and was being

"actively traded" on several currency exchanges.  See, e.g., id. ¶ 39.  Defendants also

made up and arbitrarily changed the price of My Big Coin to mimic the fluctuations of a

legitimate, actively-traded virtual currency.  When victims of the fraud purchased My Big

Coin, they could view their accounts on a website but "could not trade their MBC or

withdraw funds ...." Id. ¶ 37.  Defendants obtained more than $6 million from the

---

[2] In addition to Mr. Crater, the amended complaint names as defendants other individuals (Mark Gillespie, John Roche, Michael Kruger) and now-defunct corporate entities (My Big Coin Pay, Inc.; My Big Coin, Inc.).  All these defendants have defaulted, see Docket ## 85-88, except for Mr. Kruger who was served on September 3, 2018 in accordance with the court's alternative service Order.  See Docket ## 96, 102.

[3] According to the amended complaint, a virtual currency is "a digital representation of value that functions as a medium of exchange, a unit of account, and/or a store of value, but does not have legal tender status in any jurisdiction." Am. Compl. ¶ 25.  Unlike United States dollars or other "'real' currencies," virtual currencies "use decentralized networks to track transactions between persons," and transfers are recorded in a "decentralized ledger" that functions without any "central intermediary in which both users need to trust." Id.

scheme, some of which is currently held by the several Relief Defendants.

Plaintiff brought suit on January 16, 2018, alleging violations of Section 6(c)(1) of the Commodities Exchange Act, 7 U.S.C. § 9(1), and CFTC Regulation 180.1(a), 17 C.F.R. § 180.1(a).  It also moved for a temporary restraining order and a preliminary injunction.  The court granted the temporary restraining order and defendants subsequently consented to a preliminary injunction.  Thereafter, plaintiff amended its complaint and defendants filed the pending motion to dismiss, which both parties extensively briefed and argued.

## II.    Legal Principles

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  For purposes of a motion to dismiss, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor.  See Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 52–53 (1st Cir. 2013).

## III.    Application

### A.    Jurisdiction

As an initial matter, although defendants suggest that this court does not have subject matter jurisdiction for lack of a federal question, their underlying argument that the alleged conduct did not involve a "commodity" goes to the merits of plaintiff's claim,

not jurisdiction.  This court has subject matter jurisdiction because the case presents a federal question, see 28 U.S.C. § 1331, and because federal law expressly authorizes CFTC to sue and the court to grant appropriate relief, see 7 U.S.C. §13a-1(a); 28 U.S.C. § 1345.  See, e.g., CFTC v. Hunter Wise Commodities, LLC, 749 F.3d 967, 974 (11th Cir. 2014) ("[Defendant-Appellants] argue the Commission's statutory authority, its 'jurisdiction,' does not reach the transactions at issue, but we note at the outset that this is not a matter of the court's jurisdiction to hear this case.").

**B.    Whether Plaintiff Has Adequately Alleged the Sale of a "Commodity" Under the CEA**

"The Commodity Exchange Act (CEA) has been aptly characterized as a 'comprehensive regulatory structure to oversee the volatile and esoteric futures trading complex.'"  Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 356 (1982) (internal citation omitted) (quoting H.R.Rep. No. 93–975, at 1 (1974) (hereinafter "House Report")).  Accordingly, the present Act generally grants CFTC exclusive jurisdiction over futures contracts and the exchanges where they are traded.  See 7 U.S.C. § 2(a)(1)(A).[4]  CFTC has additional powers under the statute, including the general anti-fraud and anti-manipulation authority over "any ... contract of sale of any commodity in interstate commerce" pursuant to which it brings the claims in this case. See 7 U.S.C. § 9(1).

As noted above, plaintiff alleges violations of CEA Section 6(c)(1) and CFTC regulation 180.1(a).  Both provisions apply to the fraud alleged in this case if the

---

[4]    Simply put, a "futures contract" is an agreement to buy or sell a certain quantity of a commodity at a certain price at a certain time in the future.  See CFTC v. Erskine, 512 F.3d 309, 323 (6th Cir. 2008).  Such contracts are standardized so they may be traded on exchanges.  See id.

conduct involved a "commodity" under the CEA.  <u>See</u> 7 U.S.C. § 9(1) (banning, <u>inter alia</u>, the use of "any manipulative or deceptive device or contrivance" "in connection with any ... contract of sale of any commodity in interstate commerce"); 17 C.F.R. §180.1(a) (banning, <u>inter alia</u>, the use of "any manipulative device, scheme, or artifice to defraud" "in connection with any ... contract of sale of any commodity in interstate commerce").  Therefore, to state a viable claim, plaintiff must adequately plead that My Big Coin is a commodity.

"Commodity" is a defined term in the CEA.  <u>See</u> 7 U.S.C. § 1a(9).  It includes a host of specifically enumerated agricultural products as well as "all other goods and articles ... and all services rights and interests ... in which contracts for future delivery are presently or in the future dealt in."  <u>Id.</u>  The full definition reads:

> The term "commodity" means wheat, cotton, rice, corn, oats, barley, rye, flaxseed, grain sorghums, mill feeds, butter, eggs, Solanum tuberosum (Irish potatoes), wool, wool tops, fats and oils (including lard, tallow, cottonseed oil, peanut oil, soybean oil, and all other fats and oils), cottonseed meal, cottonseed, peanuts, soybeans, soybean meal, livestock, livestock products, and frozen concentrated orange juice, and all other goods and articles, except onions (as provided by section 13-1 of this title) and motion picture box office receipts (or any index, measure, value, or data related to such receipts), and all services, rights, and interests (except motion picture box office receipts, or any index, measure, value or data related to such receipts) in which contracts for future delivery are presently or in the future dealt in.

Defendants contend that because "contracts for future delivery" are indisputably not "dealt in" My Big Coin, it cannot be a commodity under the CEA.   They take the position that in order to satisfy the CEA's "commodity" definition, the specific item in question must itself underlie a futures contract.  Plaintiff responds that "a 'commodity' for purposes of [the CEA definition] is broader than any particular type or brand of that

commodity." Docket # 70 at 10.[5]  Pointing to the existence of Bitcoin futures contracts, it argues that contracts for future delivery of virtual currencies are "dealt in" and that My Big Coin, as a virtual currency, is therefore a commodity.[6]

The text of the statute supports plaintiff's argument.  The Act defines "commodity" generally and categorically, "not by type, grade, quality, brand, producer, manufacturer, or form."  Docket # 70 at 11.  For example, the Act classifies "livestock" as a commodity without enumerating which particular species are the subject of futures trading.  Thus, as plaintiff urges, Congress' approach to defining "commodity" signals an intent that courts focus on categories—not specific items—when determining whether the "dealt in" requirement is met.

This broad approach also accords with Congress's goal of "strengthening the

---

[5]     Plaintiff also attempts to sidestep the issue of futures contracts by arguing that My Big Coin is a "good" or an "article" and that items in these categories are commodities under the CEA even in the absence of contracts for future delivery.  That argument is unavailing.  The "dealt in" clause applies to both "goods and articles" as well as "services, rights, and interests."  See United States v. Brooks, 681 F.3d 678, 694 (5th Cir. 2012) ("Natural gas is plainly a 'good' or 'article.' The question thus turns on whether it is a good 'in which contracts for future delivery are presently or in the future dealt with.'"); Bd. of Trade of City of Chicago v. S.E.C., 677 F.2d 1137, 1142 (7th Cir. 1982) ("literally anything other than onions [can] become a 'commodity' and thereby subject to CFTC regulation simply by its futures being traded on some exchange"), judgment vacated as moot SEC v. Bd. of Trade of City of Chicago, 459 U.S. 1026 (1982); CFTC v. McDonnell, 287 F. Supp. 3d 213, 228 (E.D.N.Y. 2018) ("Where a futures market exists for a good, service, right, or interest, it may be regulated by CFTC, as a commodity."); CFTC v. Reed, 481 F. Supp. 2d 1190, 1194 (D. Colo. 2007) ("In 1974 the CEA was amended to expand its jurisdiction from a statutory list of enumerated commodities to include all goods and articles in which a futures contract is traded."); see also Dunn v. CFTC, 519 U.S. 465, 469 (1997) ("the 1974 amendments that created the CFTC [] dramatically expanded the coverage of the statute to include nonagricultural commodities 'in which contracts for future delivery are presently or in the future dealt in' ....").

[6]     The court takes judicial notice of the undisputed facts that (a) Bitcoin futures are presently traded; and (b) no futures contracts exist for My Big Coin.  See In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003) (court should consider matters susceptible to judicial notice in ruling on a motion to dismiss, including matters of public record); Bitcoin Futures Contract Specs, CME GROUP, https://www.cmegroup.com/trading/equity-index/us-index/bitcoin_contract_specifications.html (last visited September 25, 2018); Summary Product Specifications Chart for Cboe Bitcoin (USD) Futures, CBOE FUTURES EXCHANGE, http://cfe.cboe.com/cfe-products/xbt-cboe-bitcoin-futures/contract-specifications (last visited September 25, 2018).

federal regulation of the ... commodity futures trading industry," House Report at 1,

since an expansive definition of "commodity" reasonably assures that the CEA's

regulatory scheme and enforcement provisions will comprehensively protect and police

the markets.  That goal is particularly relevant here, given that the court is construing

the term "commodity" not in a vacuum, but rather as it functions within the CEA's anti-

fraud enforcement provision of Section 6(c)(1).   As the Supreme Court has instructed

in an analogous context, such statutes are to be "construed 'not technically and

restrictively, but flexibly to effectuate [their] remedial purposes."  SEC v. Zandford, 535

U.S. 813, 819 (2002) (analyzing Section 10(b) of the Securities Exchange Act) (quoting

SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 195 (1963)).

        Finally, the scant caselaw on this issue also supports plaintiff's approach.  In a

series of cases involving natural gas, courts have repeatedly rejected arguments that a

particular type of natural gas was not a commodity because that specific type was not

the subject of a futures contract.  See United States v. Brooks, 681 F.3d 678 (5th Cir.

2012); United States v. Futch, 278 F. App'x 387, 395 (5th Cir. 2008); United States v.

Valencia, No. CR.A. H-03-024, 2003 WL 23174749, at *8 (S.D. Tex. Aug. 25, 2003),

order vacated in part on reconsideration, No. CRIM.A. H-03-024, 2003 WL 23675402

(S.D. Tex. Nov. 13, 2003), rev'd and remanded on other grounds, 394 F.3d 352 (5th

Cir. 2004).  Rather, the courts held that because futures contracts in natural gas

underlaid by gas at Henry Hub, Louisiana were dealt in, and because natural gas is

"fungible" and may move freely throughout a national pipeline system, this was

sufficient to show that natural gas, including the types at issue in these cases, was a

commodity.  See Brooks, 681 F.3d at 694-95 (observing that "it would be peculiar that

natural gas at another hub is not a commodity, but suddenly becomes a commodity solely on the basis that it passes through Henry Hub, and ceases to be a commodity once it moves onto some other locale"); Futch, 278 F. App'x at 395 (noting that "Henry Hub is the nexus of several major natural gas pipelines" and focusing on "the type of commodity in question, natural gas"); Valencia, 2003 WL 23174749 at *8 (noting that "natural gas is fungible" and finding that "natural gas for delivery on the West Coast or otherwise, is a commodity.").[7]  Taken together, these decisions align with plaintiff's argument that the CEA only requires the existence of futures trading within a certain class (e.g. "natural gas") in order for all items within that class (e.g. "West Coast" natural gas) to be considered commodities.

Here, the amended complaint alleges that My Big Coin is a virtual currency and it is undisputed that there is futures trading in virtual currencies (specifically involving Bitcoin).  That is sufficient, especially at the pleading stage, for plaintiff to allege that My Big Coin is a "commodity" under the Act.[8]  See CFTC v. McDonnell, 287 F. Supp. 3d 213, 228 (E.D.N.Y. 2018) ("Virtual currencies can be regulated by CFTC as a commodity."); In re BFXNA Inc., CFTC Docket 16-19, at 5-6 (June 2, 2016) ("[V]irtual currencies are encompassed in the [CEA] definition and properly defined as commodities."); In re Coinflip, Inc., CFTC Docket No. 15-29, at 3  (Sept. 17, 2015)

---

[7]      The Valencia court somewhat hedged this ruling, stating that "the issue ... of whether 'West Coast gas' is a commodity 'in which contracts for future delivery are presently or in the future dealt in' is a fact question."  Valencia, 2003 WL 23174749 at *8.

[8]      Contrary to defendants' argument, the amended complaint alleges that My Big Coin and Bitcoin are sufficiently related so as to justify this categorical treatment.  Plaintiffs have alleged that My Big Coin and Bitcoin are both virtual currencies, see Am. Compl. ¶ 26, and have alleged various characteristics common to virtual currencies, see Am. Compl. ¶ 25. That is enough under the court's reading of the statute and the principles discussed herein.

(same).[9]  Accordingly, defendants' first ground for dismissal fails.

**C.  Whether Section 6(c)(1) and Regulation 180.1(a) Reach the Fraud Alleged**

Defendants argue, second, that even if My Big Coin is a commodity, the complaint is still deficient because the laws under which the claims are brought "were meant to combat fraudulent market manipulation—not the kind of garden variety sales puffery that the Amended Complaint alleges."  Docket # 69 at 15.  That argument fails because both Section 6(c)(1) and Regulation 180.1 explicitly prohibit fraud even in the absence of market manipulation.  See 7 U.S.C. § 9 (banning the use of any "manipulative **or** deceptive device or contrivance" in connection with the sale of a commodity) (emphasis added); 17 C.F.R. §180.1(a) (banning the use of "any manipulative device, scheme, or artifice to defraud," the making of "any untrue or misleading statement of a material fact," or the use of "any act, practice, or course of business, which operates ... as a fraud or deceit ...." in connection with the sale of a commodity).  Courts have accordingly recognized CFTC's power to prosecute fraud under these provisions.  See CFTC v. S. Tr. Metals, Inc., No. 16-16544, 2018 WL 3384266, at *1, 6, 15 (11th Cir. July 12, 2018) (affirming judgment for CFTC in "commodities-fraud case" alleging violations of Regulation 180.1 that "involve[d] no allegation ... that the Defendants manipulated the price of a commodity"); McDonnell, 287 F. Supp. 3d at 229 ("Language in 7 U.S.C. § 9(1), and 17 C.F.R. § 180.1, establish

---

[9]    While McDonnell, In re Coinflip, and In re BFXNA can be distinguished on their facts since each case involved the virtual currency Bitcoin, these orders are nevertheless useful data points. Each supports the court's view that the appropriate inquiry under the CEA is whether contracts for future delivery of virtual currencies are dealt in, not whether a particular type of virtual currency underlies a futures contract.

9

the CFTC's regulatory authority over the manipulative schemes, fraud, and misleading statements alleged in the complaint."), aff'd on reconsideration, No. 18-CV-361, 2018 WL 3435047, at *2 (E.D.N.Y. July 16, 2018) ("Title 7 U.S.C. § 9(1) gives the CFTC standing to exercise its enforcement power over the fraudulent schemes alleged in the complaint."); CFTC v. Hunter Wise Commodities, LLC, 21 F. Supp. 3d 1317, 1348 (S.D. Fla. 2014) (finding defendants liable for violating Section 6(c)(1) and Regulation 180.1 in fraud case not involving allegations of market manipulation). But see CFTC v. Monex Credit Co., No. SACV 17–01868 JVS (DFMx), 2018 WL 2306863, at *7-10 (C.D. Cal. May 1, 2018) (finding that Section 6(c)(1) prohibits only fraud-based market manipulation).  Though some isolated statements in the legislative history surrounding Section 6(c)(1) suggest Congress was, perhaps, principally concerned with combating manipulation, see Docket # 69 at 15, these statements are insufficient to overcome the broad language in the statute as it was passed.

**D.     Whether the Amended Complaint Fails to Support its Misappropriation Theory**

Finally, though the amended complaint references misappropriation, the relevant count is "fraud by deceptive device or contrivance" in violation of Section 6(c)(1) and Regulation 180.1(a).  The amended complaint sets forth in detail the allegations supporting this charge.  As such, any failure to allege that defendants had an obligation to use customer funds in a certain way has no bearing on whether plaintiff has adequately pleaded this claim.

**IV.     Conclusion**

Defendants' motion to dismiss (Docket # 68) is denied.

_____September 26, 2018_____          _____/s/Rya W. Zobel_____
DATE                                        RYA W. ZOBEL
                                   SENIOR UNITED STATES DISTRICT JUDGE

11