UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> MY BIG COIN PAY, INC., MY BIG COIN, INC., RANDALL CRATER, MARK GILLESPIE, JOHN ROCHE, and MICHAEL KRUGER, <br><br> Defendants, <br><br> Kimberly Renee Benge, Kimberly Renee Benge d/b/a Greyshore Advertisement a/k/a Greyshore Advertiset, Barbara Crater Meeks, Erica Crater, Greyshore, LLC, Greyshore Technology, LLC, <br><br> Relief Defendants. | Case No. 18-CV-10077-DJC |

**[PROPOSED] FINAL JUDGMENT BY DEFAULT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTY, AND OTHER STATUTORY AND EQUITABLE RELIEF AGAINST DEFENDANTS MY BIG COIN PAY, INC., MY BIG COIN, INC., MARK GILLESPIE, AND JOHN ROCHE**

On April 20, 2018, the Commission filed an Amended Complaint charging Defendant**s**

Randall Crater[1], Mark Gillespie, My Big Coin Pay, Inc. ("MBCP"), My Big Coin, Inc.

("MBCI"), John Roche, and Michael Kruger[2] with violating Section 6(c)(1) of the Commodity

---

[1] On December 5, 2024, the Commission moved for entry of a consent order resolving in full its claims against Defendant Crater (the "Crater Consent Order"), which the Court granted on February 6, 2025.  ECF Nos. 180, 181, 182.  Accordingly, Crater is no longer a party to this action.

[2] The Commission filed a notice to voluntarily dismiss Defendant Kruger from the matter on May 1, 2025.  ECF No. 193.  Kruger is no longer a party to this action.

Exchange Act ("Act"), 7 U.S.C. § 9(1), and Commission Regulation ("Regulation") 180.1(a),

17 C.F.R. § 180.1(a) (2024).

In addition, the Amended Complaint claimed that Relief Defendants Erica Crater;

Kimberly Renee Benge; Kimberly Renee Benge d/b/a Greyshore Advertisement a/k/a Greyshore

Advertiset; Barbara Crater Meeks; Greyshore, LLC; and Greyshore Technology, LLC ("Relief

Defendants"), who were not charged with violations of the Act or Regulations, received funds

and assets from Defendants, to which Relief Defendants held no legitimate interest or entitlement

and which were derived from Defendants' fraudulent and violative acts.[3]

On April 20, 2018, pursuant to Rule 5(b)(2)(C) of the Federal Rules of Civil Procedure,

the Commission served Defendant Gillespie with the Amended Complaint by mailing a copy to

his last known address.  Gillespie did not respond to the Amended Complaint, and on June 22,

2018, upon the Commission's application, the Clerk of the Court issued a Notice of Default as

provided by Rule 55(a) of the Federal Rules of Civil Procedure.  ECF No. 85.

On April 20, 2018, pursuant to Rule 5(b)(2)(C) and (E) of the Federal Rules of Civil

Procedure, the Amended Complaint was served on MBCP via transmission of the Notice of

Electronic Filing through the Court's transmission facilities and by mailing a copy of the

Amended Complaint to the last known address of Erica Crater, MBCP's secretary.  MBCP did

not respond to the Amended Complaint, and on June 22, 2018, upon the Commission's

application, the Clerk of the Court issued a Notice of Default as provided by Rule 55(a) of the

Federal Rules of Civil Procedure.  ECF No. 88.

---

[3] On February 13, 2025, the Commission moved to voluntarily dismiss the Relief Defendants
pursuant to 41(a)(2) of the Federal Rules of Civil Procedure, which the Court granted on April
23, 2025, ECF Nos. 184, 187.  Accordingly, the Relief Defendants are no longer parties to this
action.

On May 3, 2018, pursuant to Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure, the process server retained by the Commission served MBCI with the Summons (ECF No. 67 at 1) and the Amended Complaint (ECF No. 63) by delivering them to John Roche.  Affidavit of Service executed by John Hemmens, dated May 3, 2018, ECF No. 67 at 2.  Roche is designated by law to accept service on behalf of MBCI and is the president of MBCI.  *Id*; Am. Compl. ¶ 17. MBCI did not respond to the Amended Complaint, and on June 22, 2018, upon the Commission's application, the Clerk of the Court issued a Notice of Default as provided by Rule 55(a) of the Federal Rules of Civil Procedure.  ECF No. 87.

On May 3, 2018, pursuant to Rule 4(e)(2)(A) of the Federal Rules of Civil Procedure, the process server retained by the Commission personally served Defendant Roche at his residence in Newport Beach, CA, with the Summons (ECF No. 66 at 1) and the Amended Complaint (ECF No. 63).  Affidavit of Service executed by John Hemmens, dated May 3, 2018, ECF No. 66 at 2. Roche did not respond to the Amended Complaint, and on June 22, 2018, upon the Commission's application, the Clerk of the Court issued a Notice of Default as provided by Rule 55(a) of the Federal Rules of Civil Procedure.  ECF No. 86.

The Commission has moved this Court to grant final judgment by default against Defendants MBCP, MBCI, Gillespie, and Roche ("Defaulted Defendants"), order permanent injunctive relief, and impose a restitution obligation and civil monetary penalties.  The Court has carefully considered the Amended Complaint, the allegations of which are well-pleaded and hereby taken as true, the Commission's memorandum in support of its Motion, other written submissions filed with the Court, and the record in this case, and being fully advised in the premises, it is hereby:

**ORDERED** that the Plaintiff's Motion for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalty, and Other Statutory and Equitable Relief against Defendants My Big Coin Pay, Inc. ("MBCP"); My Big Coin, Inc. ("MBCI"); Mark Gillespie ("Gillespie"); and John Roche ("Roche") is **GRANTED**.

Accordingly, the Court enters findings of fact, conclusions of law, and an Order of Final Judgment by Default for Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief ("Order") pursuant to Sections 6c and 6d of the Act, 7 U.S.C. § 13a-1, as set forth herein.

## I.     FINDINGS OF FACT

### A.     The Parties

1.     Plaintiff Commodity Futures Trading Commission is an independent regulatory agency that is charged by Congress with the administration and enforcement of the Act and the Regulations promulgated thereunder.  Am. Compl. ¶ 12.

2.     Defendant My Big Coin Pay, Inc. is a corporation based in Las Vegas, Nevada. MBCP was incorporated on October 9, 2014.  MBCP's last known address is 3960 Howard Hughes Parkway, Suite 500, Las Vegas, Nevada 89169.  MBCP has never been registered with the Commission.  Am. Compl. ¶ 13.

3.     Defendant My Big Coin, Inc. is a corporation based in Las Vegas, Nevada.  MBC Inc. was incorporated on April 28, 2014.  MBC Inc.'s last known address is 3960 Howard Hughes Parkway, Suite 500, Las Vegas, Nevada 89169.  MBC Inc. has never been registered with the Commission.  Am. Compl. ¶ 14.

4.    Defendant Mark Gillespie is a resident of Hartland, Michigan.  Gillespie solicited MBC Customers on behalf of MBCP and MBC Inc.  Gillespie has never been registered with the Commission.  Am. Compl. ¶ 16.

5.    Defendant John Roche is a resident of Newport Beach, California.  Roche is the President of MBCP and MBC Inc.  Roche has never been registered with the Commission.  Am. Compl. ¶ 17.

**B.    Solicitation Fraud**

6.    From at least January 2014 through at least June 2017 ("Relevant Period"), Defendant Randal Crater together with Defendant Michael Kruger and the Defaulted Defendants (collectively, "Defendants"), operated a virtual currency scheme in which they fraudulently offered the sale of a fully functioning virtual currency, My Big Coin ("MBC"), a commodity in interstate commerce.  Am. Compl. ¶ 1.  Defendants obtained more than approximately $6 million from at least twenty-eight customers ("MBC Customers") through fraudulent solicitations.  Am. Compl. ¶ 1; Vilenskiy Decl. ¶ 23.

7.    Defendants fraudulently solicited potential and existing MBC Customers throughout the United States by making false and misleading claims and omissions about MBC's value, usage, and trade status, and that MBC was backed by gold.  Am. Compl. ¶¶ 2, 26-59; Vilenskiy Decl. ¶¶ 5-22.  In this regard, the MBC website, maintained and operated by Defendants, conveyed to potential and actual MBC Customers numerous solicitation materials, MBC trade data, and other materials (1) misrepresenting that MBC was actively being traded on several currency exchanges, when in fact it was not; (2) misrepresenting in reports the daily trading price, when in fact no price existed because MBC was not trading; and (3) misrepresenting that MBC was backed by gold, when in fact it was not.  Am. Compl. ¶¶ 2, 31-

5

37; Vilenskiy Decl. ¶¶ 5-22.  In reality, the supposed trading results were illusory, and any payouts of funds to MBC Customers were derived from funds fraudulently obtained from other MBC Customers in the manner of a Ponzi scheme.  Am. Compl. ¶¶ 2, 31-34, 36, 37, 38, 64, 66.

8.    Defendants solicited potential MBC Customers to purchase MBC, a virtual currency with a similar sounding name to a more commonly known virtual currency, "Bitcoin." Am. Compl. ¶ 26.  Defendants solicited potential MBC Customers and, along with the Relief Defendants, received and directed deposits, withdrawals, and transfers of MBC Customer funds. Am. Compl. ¶¶ 29, 60-66; Vilenskiy Decl. ¶¶ 23-43.

9.    Defendants' solicitations to potential MBC Customers to purchase MBC included false and misleading representations and omissions of material facts about MBC's active trading status, rising prices, and the currency's merits.  Am. Compl. ¶¶ 31-59.  Defendants made these false and misleading representations and omissions of material facts to potential MBC Customers directly and indirectly via the MBCI website, other websites associated with the Defendants and MBC, YouTube videos, press releases, and posting on various social media platforms, such as Facebook, LinkedIn, and chatroom websites.  Am. Compl. ¶ 32.

10.    In soliciting prospective MBC Customers, throughout the Relevant Period, Defendants, individually and/or as controlling persons or agents of the MBC Entities, made false and misleading statements and omissions of material fact, including but not limited to the following:

    a.    Issuing written statements misrepresenting that MBC was actively being traded on several currency exchanges;

    b.    Issuing written statements misrepresenting the daily trading price of MBC;

    c.    Issuing written statements misrepresenting that MBC was backed by gold;

    d.    Issuing written statements misrepresenting that MBC could be purchased, sold, traded, donated, and used to make purchases;

6

    e.       Issuing written statements misrepresenting that MBC was a global currency that allowed customers to send money anywhere at any time in any currency;

    f.       Issuing written statements misrepresenting that MBC could be used anywhere that MasterCard was accepted;

    g.       Issuing written statements misrepresenting that the MBC Entities were affiliated or had a relationship with the credit card companies Visa, MasterCard, American Express, and/or Discover;

    h.       Issuing written statements misrepresenting that MBC could be used at the "MBC Mall" to purchase products;

    i.       Issuing written statements mispresenting that customers owned a certain number of MBC and that MBC could be sold or customers could withdraw their funds; and

    j.       Failing to disclose, and omitting, that Defendants were misappropriating MBC Customer funds.

Am. Compl. ¶¶ 33-59, 78-79.

       11.     For example, on August 15, 2015, Defendants posted a YouTube video that claimed that MBC was a fully-functioning virtual currency that could be used to buy goods and services, and that was actively trading on "[s]everal currency exchanges . . . for dollars, euros, and more" and stated that MBC was the only virtual currency backed by gold to give prospective customers the illusion that MBC was safe to purchase. Am. Compl. ¶ 33; Vilenskiy Decl. ¶¶ 12, 13. The video directed potential MBC Customers to visit the MBCI website, www.MyBigCoin.com, for more information. Am. Compl. ¶ 33; Vilenskiy Decl. ¶ 13. The MBCI website later claimed that MBC could be traded through the MBC Exchange. Am. Compl. ¶ 33. Defendants further claimed that MBC could be purchased, sold, traded, donated, and used to make purchases, and that MBC was "a global currency that lets you send money anywhere, anytime in any currency." *Id.*

12.     Similarly, on April 3, 2014, Gillespie sent an email to a MBC customer in which he wrote "all good with MBC…VERY good in fact.  Each coin is now backed with gold! So, our currency and accounts are backed better than the FDIC backs your money in the bank!"  Am. Compl. ¶ 51; Vilenskiy Decl. ¶ 19.

13.     In addition, furthering the illusion of MBC's value, MBC Customers could monitor their purchases and sales of MBC through their account on the MBC Inc. website.  Am. Compl. ¶ 36.  MBC Customers could also view the purported current price of MBC on the MBC Inc. website and could view or participate in MBC trading on the MBC Exchange website.  *Id*. For example, on September 21, 2015, the MBC Exchange website reported the last exchange trade of MBC at $410 USD; a high trade at $500 USD and a low trade at $60 USD.  The website also additionally reported the latest trade volumes and prices.  Am. Compl. ¶ 36; Vilenskiy Decl. ¶ 11.  Defendants told MBC Customers that the Defendants had created the exchange so customers could trade MBC.  Am. Compl. ¶ 36.  These statements by Defendants were false and misleading representations and omitted material facts.  *Id*.  In fact, MBC was not actively traded on any currency or other exchange, was not backed by gold, was not associated with MasterCard or any other credit card company, and could not be used "to send money anywhere, anytime in any currency."  *Id*.

**C.     Misappropriation of Customer Funds**

14.     During the Relevant Period, Defendant Crater misappropriated virtually all of the approximately $6 million they solicited from MBC Customers.  Am. Compl. ¶¶ 60-66; Vilenskiy Decl. ¶¶ 23-43.  As a result, MBC Customers have lost most, if not all, of their funds due to the fraud and misappropriation.  Am. Compl. ¶¶ 60-66; Vilenskiy Decl. ¶¶ 23-43

15.     From at least January 2014 through at least June 2017, Defendants received more than approximately $6 million from at least twenty-eight MBC Customers in connection with the fraudulent scheme.  Am. Compl. ¶ 61; Vilenskiy Decl. ¶ 9.  Defendant Crater misappropriated almost all of these MBC Customers' funds for improper and unauthorized uses, such as to wrongfully enrich himself.  Am. Compl. ¶ 61; Vilenskiy Decl. ¶¶ 30-43.

16.     Defendants directed MBC Customers to transfer funds into bank accounts controlled by or operated for the benefit of Defendants and Relief Defendants.  Am. Compl. ¶ 62; Vilenskiy Decl. ¶¶ 24-29.  For example, Defendants instructed MBC Customers to transfer funds by wire or through written checks into bank accounts held in the names of Relief Defendants Greyshore Advertisement, Greyshore LLC, Greyshore Technology, Barbara Crater Meeks, and Defendant Gillespie.  Am. Compl. ¶ 63; Vilenskiy Decl. ¶¶ 24-29.

17.     Upon receipt or very soon after receipt of MBC Customers' funds, the MBC Customer funds were transferred to other accounts controlled by Defendant Crater or Relief Defendant Erica Crater, or withdrawn to make purchases for Defendant Crater's or Relief Defendants' own financial benefit.  Am. Compl. ¶ 64; Vilenskiy Decl. ¶ 30.  On occasion, MBC Customer funds were transferred illegally to other MBC Customers to cover up Defendants' fraud.  Am. Compl. ¶ 64.  For example, MBC Customer funds for the purchase of MBC were transferred to a bank account in the name of "Kimberly Renee Benge d/b/a Greyshore Advertisemet a/k/a Greyshore Advertiset."  Am. Compl. ¶ 65; Vilenskiy Decl. ¶ 24.  On September 12, 2014, Relief Defendant Kimberly Benge withdrew funds from this account and purchased a cashier's check made out to "Kimberly Benges Greyshore Advertisment" in the amount of $1,849,370.38.  Am. Compl. ¶ 65; Vilenskiy Decl. ¶¶ 27, 34.  The next business day, September 15, 2014, this cashier's check was deposited into a bank account held in the name of

Greyshore LLC.  Am. Compl. ¶ 65; Vilenskiy Decl. ¶ 27.  On September 19, 2014, Defendants

and/or Relief Defendants wired $631,523.79 from the Greyshore LLC bank account to a real

estate settlement company in Florida with the notation "Other Home Purchase."  Am. Compl. ¶

65; Vilenskiy Decl. ¶ 37.  On or about September 26, 2014, Relief Defendant Erica Crater

purchased a home for the price of approximately $645,000 using the funds transferred to the real

estate settlement company.  *Id*.

**D.    Gillespie Acted as an Agent for the MBC Entities**

18.    Through his actions in marketing and soliciting customers, through direct

communications and posting on social media, and directing MBC Customers to transfer funds

which they believed were for the purchase of MBC to bank accounts controlled by Defendants,

Gillespie acted as an agent of the MBC Entities.

**E.    Roche Was a Controlling Person of the MBC Entities**

19.    Roche was a controlling person of the MBC Entities.  Roche was the CEO of each

of the MBC Entities.  As a senior officer of the company, he had the ability to control the

marketing information which appeared on the MBC Entities' websites, social media sites and

YouTube, including the fraudulent and misleading representations and omitted material facts

about the price of MBC, its backing by gold, and trading activity which appeared on these

Internet sites.

**F.    Roche Acted as an Agent for the MBC Entities**

20.    Through his actions in marketing MBC on the MBC Entities' website, social

media sites and YouTube, Roche acted as an agent for the MBC Entities.

## II.    CONCLUSIONS OF LAW

### A.    Jurisdiction and Venue

21.    This Court has jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), which provides that whenever it shall appear to the Commission that a person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder, the Commission may bring an action for injunctive relief in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or other thereunder.

22.    The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).

23.    Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e) because Defaulted Defendants reside or transacted business in this District, and because the acts and practices in violation of the Act and the Regulations occurred, are occurring, or are about to occur, within this District, among other places.

### B.    Fraud by Deceptive Device or Contrivance

24.    Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), makes it unlawful for any person, directly or indirectly, to:

> use or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate by not later than 1 year after July 21, 2010, [the date of enactment of the Dodd-Frank Wall

11

Street Reform and Consumer Protection Act] . . . .

25.     Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2024), provides:

> It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:
> (1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;
> (2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading;
> (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any        person        .        .        .        .

26.     Virtual currencies are encompassed in the definition of "commodity" under 7 U.S.C. § 1a(9).

27.     By the conduct described herein, Defaulted Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) by, among other things, in connection with contracts of sale of commodities in interstate commerce, making or attempting to make untrue or misleading statements of material fact or omitting to state or attempting to omit material facts necessary in order to make statements made not untrue or misleading, including without limitation, the following:

   a.  Issuing written statements misrepresenting that MBC was actively being traded on several currency exchanges, including the MBC Exchange;

   b.  Verbally telling MBC Customers that MBC would be listed on a new exchange when trading on the MBC Exchange was unsuccessful;

   c.  Issuing written statements misrepresenting the daily trading price of MBC;

   d.  Issuing written statements misrepresenting that MBC was backed by gold;

   e.  Issuing written statements misrepresenting that MBC could be purchased, sold, traded, donated, and used to make purchases;

f.  Issuing written statements misrepresenting that MBC was a global currency that allowed customers to send money anywhere at any time in any currency;

g.  Issuing written statements misrepresenting that MBC could be used anywhere that MasterCard was accepted;

h.  Issuing written statements misrepresenting that the MBC Entities were affiliated or had a relationship with the credit card companies Visa, MasterCard, American Express, and/or Discover;

i.  Issuing written statements misrepresenting that MBC could be used at the "MBC Mall" to purchase products;

j.  Issuing written statements mispresenting that customers owned a certain number of MBC and that MBC could be sold or customers could withdraw their funds; and

k.  Failing to disclose, and omitting, that Defendants were misappropriating MBC customer funds.

28.    As described above, Defaulted Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) by, among other things, in connection with contracts of sale of a commodity in interstate commerce, soliciting customers with false and misleading statements about MBC's trading activity, usage, value, affiliation with credit card companies, and backing by gold; providing MBC Customers with false statements misrepresenting that customers owned a certain number of MBC and that MBC could be sold or customers could withdraw their funds; and misappropriating MBC Customers' funds.

29.    Defaulted Defendants engaged in the acts and practices described above willfully, intentionally, or recklessly.

30.    By this conduct, Defaulted Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

31.    Roche controlled the MBC Entities, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, the MBC Entities' conduct in violation of the Act and Regulations; therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Roche is

13

liable for the MBC Entities' violations of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

32.    The foregoing acts, omissions, and failures of Gillespie described in this Complaint occurred within the scope of his agency, employment, or office at the MBC Entities; therefore, pursuant to Section 2(a)(1)(B) of the Act and Regulation 1.2, the MBC Entities are liable for Gillespie's violations of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

33.    Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defaulted Defendants will continue to engage in the acts and practices alleged in the Amended Complaint and in similar acts and practices in violation of the Act and Regulations.

### III.    PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

34.    Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendants MBCP, MBCI, Gillespie, and Roche are permanently restrained, enjoined, and prohibited from directly or indirectly, in connection with any contract of sale of any commodity in interstate commerce, intentionally or recklessly:  (1) using, employing, or attempting to use or employ, any manipulative device, scheme, or artifice to defraud; (2) making, or attempting to make, any untrue or misleading statement of a material fact or omitting to state a material fact necessary in order to make the statements made not untrue or misleading; and (3) engaging or attempting to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2024):

35.    Defendants MBCP, MBCI, Gillespie, and Roche are also permanently restrained, enjoined, and prohibited from directly or indirectly:

a.    Trading on or subject to the rules of any registered entity (as that term is

defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

b.     Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2024)), or digital asset commodities, for their own personal account or for any account in which they have a direct or indirect interest;

c.     Having any commodity interests or digital asset commodities traded on their behalf;

d.     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests or digital asset commodities;

e.     Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests or digital asset commodities;

f.     Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2024); and/or

g.     Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2024)), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9).

15

## IV.    RESTITUTION AND CIVIL MONETARY PENALTY

**IT IS FURTHER ORDERED THAT:**

**A.    Restitution**

36.    Defaulted Defendants shall pay, jointly and severally, restitution in the amount of six million, four hundred forty-two thousand, one hundred eight dollars, and zero cents ($6,442,108) ("Restitution Obligation").  If the Restitution Obligation is not paid immediately, post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

37.    To effect payment of the Restitution Obligation and the distribution of any restitution payments to MBC Customers, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor").  The Monitor shall receive restitution payments from Defaulted Defendants and make distributions as set forth below.  Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

38.    Defaulted Defendants shall make Restitution Obligation payments, and any post-judgment interest payments, under this Order to the Monitor in the name "Defaulted Defendants MBCP, MBCI, Gillespie, and Roche – Restitution Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 320 South Canal Street, Suite 2400, Chicago, Illinois 60606 under cover letter that identifies the paying Defaulted Defendant(s) and the name and docket number of this proceeding.  Defaulted Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre,

16

1155 21st Street, NW, Washington, DC 20581.

39.     The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to MBC Customers identified by the Commission or may defer distribution until such time as the Monitor deems appropriate.  In the event that the amount of Restitution Obligation payments to the Monitor are of a de minimis nature such that the Monitor determines that the administrative cost of making a distribution to eligible pool participants is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth below.

40.     Defaulted Defendants shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify MBC Customers to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments.  Defaulted Defendants shall execute any documents necessary to release funds that they have in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

41.     The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to MBC Customers during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, DC 20581.

42.     The amounts payable to each MBC Customer shall not limit the ability of any

MBC Customer of proving that a greater amount is owed from Defaulted Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any MBC Customer that may exist under state or common law.

43.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each MBC Customer who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the Restitution Obligation that has not been paid by Defaulted Defendants to ensure continued compliance with any provision of this Order and to hold Defaulted Defendants in contempt for any violations of any provision of this Order.

44.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defaulted Defendants' Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B.      Civil Monetary Penalties**

45.     Defendants MBCP, MBCI, Gillespie, and Roche shall pay, jointly and severally, a civil monetary penalty in the amount of nineteen million, three hundred twenty-six thousand, three hundred twenty-four dollars and zero cents ($19,326,324.00) ("CMP Obligation").  If the CMP Obligation is not paid immediately, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

46.     Defendants MBCP, MBCI, Gillespie, and Roche shall pay the CMP Obligation and any post-judgment interest by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures

Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> 9-amz-ar-cftc@faa.gov

If payment by electronic funds transfer is chosen, Defaulted Defendants shall the Federal Aviation Administration at the above email address above to receive payment instructions and shall fully comply with those instructions. Defaulted Defendants shall accompany payment of the CMP Obligation with a cover letter that identifies the payor and the name and docket number of this proceeding. Defaulted Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, DC 20581.

## C.    Provisions Related to Monetary Sanctions

47.    Partial Satisfaction:  Acceptance by the Commission or the Monitor of any partial payment of Defaulted Defendants' Restitution Obligation, Disgorgement Obligation, or CMP Obligation shall not be deemed a waiver of their obligation to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

48.    Asset Freeze:  On January 16, 2018, the Court entered an asset freeze order prohibiting the transfer, removal, dissipation, and disposal of the assets of Defendants Crater, Gillespie, and MBCP ("Asset Freeze Order").  On April 5, 2018, the Court ordered the continuation of the Asset Freeze Order as to Defendants Crater and MBCP.  On February 6, 2025, the Court lifted the Asset Freeze Order as to Defendant Crater's assets.  The Court hereby lifts the Asset Freeze Order as to the assets of Defendants Gillespie and MBCP.

19

## V.    MISCELLANEOUS PROVISIONS

**IT IS FURTHER ORDERED THAT:**

49.    Notice:  All notices required to be given by any provision in this Order shall be sent by certified mail, return receipt requested as follows:

Notice to Commission:

Paul G. Hayeck
Deputy Director
Commodity Futures Trading Commission
1155 21st Street, NW
Washington, DC 20581

Notice to Defendants MBCP and MBCI:
3960 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169

Notice to Defendant Mark Gillespie:
11589 Broadview Street
Hartland, MI 48353

Notice to Defendant John Roche:
4031 Rivoli
Newport Beach, CA 92660

All such notices to the Commission shall reference the name and docket number of this action.

50.    Change of Address/Phone:  Until such time as Defaulted Defendants satisfy in full their Restitution Obligation, Disgorgement Obligation, and CMP Obligation as set forth in this Order, Defaulted Defendants shall provide written notice to the Commission by certified mail of any change to their telephone number and mailing address within ten calendar days of the change.

51.    Invalidation:  If any provision of this Order or if the application of any provision or circumstance is held invalid, the remainder of the Order and the application of its provision to any other person or circumstance shall not be affected by the holding.

52.     Injunctive and Equitable Relief Provisions:  The injunctive and equitable relief provisions of this Order shall be binding upon Defaulted Defendants, upon any person under the authority or control of any of the Defaulted Defendants, and upon any person who receives actual notice of this Order, by personal service, email, facsimile, or otherwise insofar as he or she is acting in active concert or participation with Defaulted Defendants.

53.     Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by Defaulted Defendants to modify, or for relief from, the terms of this Order.

*       *       *

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Order of Final Judgment by Default, Permanent Injunction, Civil Monetary Penalty, and Other Statutory and Equitable Relief against Defendants My Big Coin Pay, Inc.; My Big Coin, Inc.; Mark Gillespie; and John Roche* forthwith and without further notice.

**IT IS SO ORDERED** on this __5th_____ day of __June_____, 2025.

United States District Judge

21